WILLIAM M. HANNAY, ET AL, *Appellants,* v. WILLIAM J. SANCHEZ *Appellee.*

Opinion Filed November 6, 1914.

A deed executed in February, 1873, by the Commissioner of Lands and Immigration in the name of the State, under the seal of the State Land Department, and actually recorded, is, in view of the policy and effect of subsequent statutes designed to cure defects in deeds executed in the name of the State, sufficient evidence of title to support a suit to quiet title, even if there were no attesting witnesses to the deed when such attestation was apparently contemplated by the form given in the statute, Chapter 1865, Acts of 1872, under which the deed was executed.

Appeal from Circuit Court for Volusia County; James W. Perkins, Judge.

Order affirmed.

### STATEMENT.

The bill of complaint herein is as follows:

"William J. Sanchez, of St. Johns County, a citizen of the State of Florida, brings this his bill against Sarah Elizabeth Hannay, whose residence is unknown, and against the unknown heirs at law and devisees of said Sarah Elizabeth Hannay, if she be dead, whose names and place of residence is to your orator unknown, and against all the unknown grantees and other parties claiming any interest under said Sarah Elizabeth Hannay in the land hereinafter described, whose place of residence is unknown to the complainant, and against the unknown heirs at law and devisees of Martin Hernandez, deceased, whose names

and place of residence is to your orator unknown, and against all the unknown grantees and other parties claiming any interest under the said Martin Hernandez in the lands hereinafter described, whose place of residence is unknówn to the complainant, and thereupon your orator complains and says:

1st.  That your orator is the bona fide owner in fee simple and in possession of the following described land, situate in the county of Volusia, State of Florida, to-wit:

The grant to Martin Hernandez, surveyed by the United States as Section 40, Township 14 South, of Range 32 East.

That your orator's title thereto is derived by descent from your orator's father, Vernancio Sanchez, who died intestate, seized of said land in A. D.———, leaving your orator his sole heir at law.

That the said Vernancio Sanchez acquired title to said tract of land under and by virtue of a tax deed from the State of Florida, issued under the provisions of an Act approved February 27, 1872, Laws of Florida, entitled 'An Act to Quiet Tax Titles to Lands,' said tax deed being dated February 15, 1873, duly and regularly executed and recorded in the public records of Volusia County on 21st day of April, 1873, in Deed Book 'B,' page 399, a copy whereof is hereto attached, marked 'Exhibit A,' and made a part hereof as fully as if here set out at length.

That the State of Florida acquired title to such lands under and by virtue of a tax sale for the non-payment of taxes, made on 4th day of July, 1849, by the tax collector of the County of Orange in which county said lands were then situated, upon the tax assessment duly and regularly made upon said lands as the property of Martin Hernandez, and a sale in default of the payment of said tax by

Virgil R. Dupont, tax collector of said county, and a tax deed thereupon issued by said tax collector to the State of Florida.

2nd. Your orator alleges that said assessment and all proceedings had therein for the sale of said lands in default of the payment of taxes by the said Martin Hernandez, former owner, and the issuance of the tax deed by said tax collector of Orange County to the State of Florida, and all proceedings had under said Act approved February 27, 1872, by which the State of Florida conveyed the said lands to the said Vernancio Sanchez, the father of your orator, February 15, 1873, were strictly in conformity with law; that said taxes were duly and regularly assessed, and said sale for non-payment of taxes was duly and regularly had, and said deed from said tax collector to the State of Florida was duly and regularly issued, and said deed from the State of Florida to the said Vernancio Sanchez was duly and regularly issued and conveyed in fee simple title to said lands to your orator's father, who immediately went into possession of said lands, and at once returned the same for taxes and continued annually to return the said lands for the taxes as his property during his lifetime, and to pay the annual taxes thereon during his lifetime, and who immediately on receipt of said deed went into actual possession of said lands and remained in actual and undisputed possession thereof from about the year 1875 to the time of his death, and since the death of the orator's father, your orator has annually paid the taxes assessed against said lands, which have been annually assessed and are now assessed as the property of your orator, and has been in the exclusive and undisputed possession of said lands and now is in such possession, claiming to own the same in absolute property.

3rd. That about A. D. 1871, while the State of Florida

was the owner in fee of said lands, one Dorothea F. J. Walker, joined by her husband, William S. Walker, claiming an interest in said lands as the daughter of Joseph M. Hernandez, son of Martin Hernandez, the former owner, attempted to convey to one John C. Baxter, all the interest of said Dorothea F. J. Walker, as devisee under the will of Joseph M. Hernandez. On April 13th, 1878, said John C. Baxter, joined by his wife, made a quitclaim deed to Peter Hannay, of the alleged estate attempted to be conveyed to said Baxter by Dorothea Walker as aforesaid. That Peter Hannay died testate and devised to the defendant, Sarah Elizabeth Hannay, all his estate, real and personal.

The orator says that said Dorothea F. J. Walker on, to-wit, the 3rd day of January, 1871, had no estate or interest whatever in said tract of land, and that said John C. Baxter never acquired any estate or interest whatever in said tract of land under and by virtue of said deed from Dorothea Walker, and that said Peter Hannay acquired no interest or estate in said land under and by virtue of said deed from said Baxter, and that at his death said Peter Hannay had no estate or interest in said tract of land and no estate or interest therein passed by his will to the defendant, Sarah Elizabeth Hannay, who, if living, has no interest or estate therein, and if she be dead, the unknown heirs at law or devisees of said Sarah E. Hannay now have no estate or interest in said tract of land and the unknown heirs and devisees of said Martin Hernandez have no estate or interest in said tract of land, but your orator is the sole and absolute owner of all said tract of land and in possession thereof, except your orator on the 15th of July, 1912, has granted to the Town of Ormond the perpetual easement for a street and public highway over said grant of land with the following description:

Beginning on the North line of said Hernandez Grant, four hundred and eighty-five feet and two inches West from a post set at the bank of the Halifax River, running thence South Twenty-six degrees East to the south line of said grant, about four thousand two hundred and seventy-five feet; running thence Easterly in the South line of said Grant fifty-feet; thence North twenty-six degrees West to the North line of said grant about four thousand two hundred and seventy-five feet; thence Westerly in the North line of said Hernandez Grand fifty feet to the point of beginning; said right of way being over a strip of land fifty feet wide laid out as above described across the said Hernandez Grant.

4th.   Said tract of land is open, uninclosed timber land and has been since A. D. 1849, and prior thereto, and vacant and unoccupied except by your orator and his agent and your orator's father and his agents.

5th.   The orator does not know the residence of said Sarah E. Hannay, and has never heard from her at any time, and after diligent search and inquiry has been unable to learn the address of the said Sarah Elizabeth Hannay, or whether or not she is living and if dead, who claims any interest in said lands as her heirs at law, devisees, grantees or otherwise, and your orator on information and belief says that the said Sarah Elizabeth Hannay, if she ever claimed any interest in said lands, wholly abandoned her claim thereto, but your orator says there may be persons claiming some estate or interest under said Sarah E. Hannay, who claim some interest in said lands whose names are unknown to your orator, and whose claim if set up would cause a cloud on the title of your orator in and to said lands and that there is no person in the State of Florida, service of subpoena upon whom

would bind said Sarah E. Hannay and said unknown persons or any of them, the age of whom and the ages of all other said persons is to the orator unknown.

6th.   That your orator does not know the names or residence and after diligent search and inquiry has been unable to ascertain the address of the heirs at law, devisees, grantees or persons claiming any estate or interest in said tract of land under said Martin Hernandez, if any there be who make any such claim of interest in said land and your orator says there is no person in the State of Florida, service of subpoena upon whom would bind the unknown heirs and devisees of said Martin Hernandez or any of them, and your orator says that the age and ages of the unknown heirs of Martin Hernandez are to the orator unknown.

7th.   That any claim of estate or interest in said lands by the unknown heirs or devisees of Sarah Elizabeth Hannay or Martin Hernandez, or which said unknown heirs may upon the record of conveyances recorded in the public records of Volusia County to have in and to said land is null and void and of no legal effect whatever for the reason that the title held by said Martin Hernandez in said lands prior to A. D. 1849 was absolutely divested by the said tax sale and tax deed made by said tax collector of Orange County to the State of Florida, and that the fee simple title to said land was conveyed by said deed issued by the State of Florida, February 15, 1873, to Vernancio Sanchez, the orator's father, and by the continued adverse occupancy of said lands under color of title by your orator's father and by your orator continually since about the 21st day of April, 1875, to the day of the filing of this bill by reason whereby an indefeasable estate in fee simple is vested in your orator.

Wherefore your orator prays that the fee simple title in and to said tract of land situated in Volusia County, State of Florida, confirmed to Martin Hernandez and surveyed by the United States as Section 40, Township 14 South of Range 32 East, containing 546 acres, more or less may be declared to be in your orator; that all claim and alleged interests, if any, of said Sarah Elizabeth Hannay and the unknown heirs, devisees, grantees and other claimants under said Sarah Elizabeth Hannay, if she be dead, and all claims and alleged interests of any of the nknown heirs, devisees, grantees and other claimants under Martin Hernandez may be declared null and void and of no effect whatever against your orator and all persons claiming said lands or any part thereof under your orator, that the said Sarah Elizabeth Hannay, if she be living and the unknown heirs, devisees and grantees or others claiming an interest in said lands under said Sarah Elizabeth Hannay, their agents, servants or attorneys and the unknown heirs, devisees, grantees and others claiming any interests in said lands under said Martin Hernandez, their agents, servants or attorneys be perpetually enjoined from interfering in any way with the possession of your orator, his tenants, grantees or legal representatives or assigns of, in and to said lands, and from asserting any title, estate or right of interest therein or thereto.

Your orator prays that the said injunction may be made perpetual.

Your orator further prays that the said Sarah Elizabeth Hannay, or if she be dead, her heirs, devisees, grantees and other claimants under her, whose names are unknown to your orator, and the heirs, devisees, grantees and other claimants under Martin Hernandez, whose

names are unknown to your orator may be required to set forth herein the nature of their said claims and all claims of said defendants or either of them adverse to your orator may be determined herein by decree of this court and may be declared null and void and against your orator and those holding title under him, that your orator's title to the said hereinbefore described lands may be quieted and that all that estate or interest, if any there were as to said lands in said defendants or either of them in law or equity, may be by this court decreed to be divested out of said defendants and all of them and be vested in your orator.

And your orator further prays for such other, further and different relief as your orator may be entitled to.

May it please your Honor to grant unto your orator the State's Writ of Subpoena, directed to said Sarah Elizabeth Hannay, and to the unknown heirs, devisees, grantees and other claimants under said Sarah Elizabeth Hannah, if she be dead, and to the unknown heirs, devisees, grantees and other claimants under Martin Hernandez, deceased, requiring them and each of them at a certain date and under certain penalty to be therein named to be and appear before this Honorable Court, then and there true and correct and perfect answer to make to all and singular the allegations of this bill, but not under oath, answer under oath being hereby expressly waived, and further to stand to, perform and abide such other and further decree herein as may seem meet and your orator will ever pray, etc."

Exhibit "A" is as follows:

"TO ALL TO WHOM THESE PRESENTS SHALL COME, Greeting: Whereas, at a sale for the non-payment of taxes at the County Site of the County of Orange, on

the fourth day of July, A. D. 1849, by Virgil R. DuPont, tax collector of said county, the following described lands, to-wit:

Section Forty (40), Township Fourteen (14) South, Range Thirty-two (32) East, containing five hundred and forty-two acres, more or less, lying on the west side of Halifax River, being a Spanish Grant confirmed to Martin Hernandez and assessed as his property (which were then embraced in Orange County, but now lie in the County of Volusia) were sold at public outcry and were purchased by the State of Florida for the sum of Eleven Dollars and fifty-four cents, which sum was the amount of taxes assessed, due and unpaid on said lands at the time of such sale, with the costs and charges thereon; and said lands thereupon conveyed by deed to the State of Florida by said Virgil R. DuPont, tax collector of Orange County.

And, whereas, said lands have been re-advertised for sale, thereby giving notice to all claimants or former owner or owners thereof, and an opportunity to redeem said lands, and no person hath appeared to redeem the same; whereupon said lands became subject to private entry under the provision of 'An Act to Quiet Titles of Lands,' approved February 27, 1872.

Now, Therefore, Know all men by these presents, That the State of Florida, for and in consideration of Nineteen Dollars and Fifty-four cents, paid by Vernancio Sanchez, of the County of St. Johns, State of Florida, hath granted, bargained, sold and conveyed, and doth by these presents grant, bargain, sell and convey unto the said Vernancio Sanchez the lands above described; TO HAVE AND TO HOLD the said lands with the hereditaments and appurtenances unto the said Vernancio Sanchez, and his heirs and assigns forever in fee simple.

In Testimony Whereof I, Hugh A. Corley, Commissioner of Lands and Immigration, have executed this deed pursuant to and in virtue of the authority in me vested by the statutes of the State of Florida, and for and on behalf of said State I have hereto subscribed my name officially and affixed the Seal of the Florida State Land Office, at the Capitol in the City of Tallahassee, and State of Florida, this 15th day of February, one thousand eight hundred and seventy-three.

(SEAL)                    Hugh A. Corley,
        Commissioner of Lands and Immigration.

Recorded April 26th, A. D. 1875.

John W. Dickins, Clerk."

William M. Hannay, as devisee of Sarah Elizabeth Hannay, and the Washington Loan and Trust Company, Trustee under the will of Sarah Elizabeth Hannay, as defendants, each filed a demurrer to the bill of complaint, as follows:

"1.   That the complainant has not in and by his said bill of complaint made or stated such a cause as entitles him to relief in a court of equity.

2.   Because it appears by the said bill of complaint that the complainant claims title to the land therein mentioned under and by virtue of an alleged tax deed issued by the State of Florida, but said bill of complaint fails to show that the complainant has ever entered into the actual possession of said land thereunder, as required by law, and the alleged tax deed is void and of no effect.

3.   Because said bill of complaint shows that the land mentioned therein is wild and unimproved, and fails to show any act on the part of complainant constituting ac-

tual possession of said land, and the allegations of said bill with reference to possession by the complainant are mere legal conclusions."

The court sustained these demurrers and afterwards granted a rehearing thereon; and after vacating the order sustaining the demurrers, overruled the demurrers, from which latter orders an appeal was taken by the defendants.

*Stewart & Stewart*, for Appellants;

*W. W. Dewhurst*, for Appellee.

WHITFIELD, J. (*after stating the facts.*)—In this suit to quiet title to designated real estate the appeal is from orders overruling demurrers to the bill of complaint.

In support of the complainant's claim that he "is the bona fide owner in fee simple and in possession of the" land in controversy, it is alleged that complainant's ancestor acquired title "by virtue of a tax deed from the State of Florida issued under the provisions of an Act approved February 27, 1872, Chapter 1865 Laws of Florida, entitled "An Act to Quiet Tax Titles to Lands," said tax deed being dated February 15, 1873, duly and regularly executed and recorded in the public records." The copy of the deed attached as an exhibit, shows that it was executed "for and on behalf of said State" by Hugh A. Corley, Commissioner of Lands and Immigration under "the seal of the Florida State Land Office," and was "recorded April 26, A. D. 1875. John W. Dickens, Clerk." The deed has no attesting witnesses. It is further alleged that the State's title was acquired under and by virtue of a tax sale for the non-payment of taxes, made

on 4th day of July, 1849, "upon the tax assessment duly and regularly made upon said lands as the property of Martin Hernandez," and a tax deed upon such sale issued to the State of Florida; "that said assessment and all proceedings had therein for the sale of said lands in default of the payment of taxes by the said Martin Hernandez, former owner, and the issuance of the tax deed by said tax collector of Orange County to the State of Florida, and all proceedings had under said act approved February 27, 1872, by which the State of Florida conveyed the said lands to the said Vernancio Sanchez, the father of your orator, February 15, 1873, were strictly in conformity with law; that said taxes were duly and regularly assessed, and said sale for non-payment of taxes was duly and regularly had, and said deed from said tax collector to the State of Florida was duly and regularly issued, and said deed from the State of Florida to the said Vernancio Sanchez was duly and regularly issued and conveyed in fee simple title to said lands to your orator's father, who immediately went into possession of said lands, and at once returned the same for taxes and continued annually to return the said lands for the taxes as his property during his lifetime, and to pay the annual taxes thereon during his lifetime, and who immediately on receipt of said deed went into actual possession of said lands and remained in actual and undisputed possession thereof from about the year 1875 to the time of his death, and since the death of the orator's father, your orator has annually paid the taxes assessed against said lands, which have been annually assessed and are now assessed as the property of your orator, and has been in the exclusive and undisputed possession of said lands and now is in such possession, claiming to own the same in absolute property;" that "said trace of land is open,

uninclosed timber land and has been since A. D. 1849, and prior thereto and vacant and unoccupied except by your orator and his agent and your orator's father and his agents."

In stating the defendant's claim of title it is alleged "that about A. D. 1871, while the State of Florida was the owner in fee of said lands one, Dorothea F. J. Walker, joined by her husband, William S. Walker, claiming an interest in said lands as the daughter of Joseph M. Hernandez, son of Martin Hernandez, the former owner, attempted to convey to one, John C. Baxter, all the interest of said Dorothea F. J. Walker, as devisee under the will of Joseph M. Hernandez. On April 13th, 1878, said John C. Baxter, joined by his wife, made a quit-claim deed to Peter Hannay, of the alleged estate attempted to be conveyed to said Baxter by Dorothea Walker as aforesaid. That Peter Hannay died testate and devised to the defendant, Sarah Elizabeth Hannay, all his estate, real and personal;" "that any claim of estate or interest in said lands by the unknown heirs or devisees of Sarah Elizabeth Hannay or Martin Hernandez, or which said unknown heirs may appear upon the record of conveyances recorded in the public records of Volusia County to have in and to said land is null and void and of no legal effect whatever for the reason that the title held by said Martin Hernandez in said lands prior to A|. D. 1849, was absolutely divested by the said tax sale and deed made by said tax collector of Orange County to the State of Floria, and that the fee simple title to said lands was conveyed by said deed issued by the State of Florida, February 15, 1873, to Vernancio Sanchez, the orator's father, and by the continued adverse occupancy of said lands under color of title by your orator's father and by your orator continually since about the 21st day of April, 1875, to the day

of the filing of this bill by reason whereby an indefeasable estate in fee simple is vested in your orator."

The prayer is that the fee simple title be decreed to be in the complainant, and that all claims and alleged interests, if any, of the defendant and those claiming under her be declared to be null and void; for appropriate injunctions and for general relief.

The allegations of fact contained in the bill of complaint are admitted by the demurrer, and if the conclusions stated are supported by the allegations of fact, such conclusions may be regarded as admitted by the general demurrers. The main question to be determined is whether the deed issued in the name of the State of Florida to complainant's ancestor was sufficient in law to convey such a title as will support this suit. The deed executed in the name of the State by the chief land officer of the State under the seal of the Florida State Land Office, recites a consideration paid to the State for the land, which land it is alleged and admitted was duly conveyed to the State for non-payment of taxes upon a valid assessment and sale. It is in effect alleged and admitted that the State acquired the title, and even if the deed from the State be insufficient to convey the legal title to the elder Sanchez, it at least gave him an equitable interest in the land. As it is admitted that the State acquired title through a tax assessment and a sale and conveyance for non-payment of taxes by the original owner under whom it is alleged and admitted that the defendants claim, such original owner had no title to transmit to the defendants. In view of the character and legal purpose of the deed executed to Vernancio Sanchez, in the name of the State, by the head of the land department, and under the seal of such department, and the actual record of such deed, and of the policy and effect of subsequent statutes designed to

cure defects in deeds executed for or in the name of the State, it is quite manifest that such deed carries a title that will support this suit even if there were no attesting witnesses to the deed when such attestation was apparently contemplated by the form given in the statute, Chapter 1865, Acts of 1872, under which the deed was executed. The allegations as to possession by the complainant are sufficient on the general demurrer to permit the production of the requisite proofs of adverse possession to show rights acquired thereby under the statute.

The orders appealed from are affirmed.

SHACKLEFORD, C. J., AND TAYLOR AND HOCKER, J. J., concur.

COCKRELL, J., takes no part.